**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-01046-TC

———————

JAMIE P. E.,[1]

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY

*Defendant*

———————

**MEMORANDUM AND ORDER**

Jamie P. E. claims that she is disabled and cannot work due to a combination of psychological impairments and traumatic brain injury. Doc. 8 at 5. She seeks review of the final decision of the Commissioner denying her Disability Insurance Benefits. Doc. 8 at 1–2. For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1**. Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support

---

[1] Plaintiff is referred to only by first name and initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2**. To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16 3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work considering his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light

of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Plaintiff notes that she fell and hit her head on a rock in 2009, suffering a traumatic brain injury. Doc. 8 at 2.[2] It appears that since then, she has struggled with processing troubling situations, particularly a home that had burned down and issues relative to the COVID-19 pandemic. From August 2020 to September 2021, Plaintiff was in therapy designed to improve her independence and attention span. Doc. 8 at 2. Medical experts during the same period noted memory impairment, "ongoing anxious disturbances," and that she often appeared "anxious or overwhelmed." *Id.* at 3. In November 2021, Plaintiff reported anxiety and feelings of worthlessness to a provider. *Id.* at 4. And in August 2022, she reported trouble sleeping, that she was "easily overwhelmed" and "avoided going out in public." *Id.* at 4.

Plaintiff applied for disability benefits in February 2020 and was initially denied in December 2020. Doc. 8 at 1. She requested a hearing and the ALJ issued an unfavorable decision in August 2022. *Id.* The Appeals Counsel denied her appeal in January 2023. *Id.* at 2.

At her hearing, Plaintiff testified that it is "hard for her to focus," or take "verbal instructions," and that it takes her a long time to get back on track if she gets off track. Doc. 8 at 4. She also reported that talking to too many people is frustrating and that she only shops at less crowded times of day. *Id.* at 4–5. Plaintiff also testified that she could not go to Wal-Mart because it caused her "extreme anxiety." *Id.* at 5.

The ALJ issued a decision denying benefits in August 2022. At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity during the period of alleged disability but that there had been a continuous 12-month stretch during that period in which Plaintiff did not engage in substantial gainful activity. Adm. Rec. at 14-15. Thus, the ALJ proceeded to analyze the remaining steps. *Id.* At step

---

[2] All document citations are to the document and page number assigned in the CM/ECF system, with the exception of citations to the administrative record (Adm. Rec.), which employ the internal record pagination.

3

two, the ALJ found that Plaintiff had severe impairments including "major depressive disorder," PTSD, "unspecified anxiety, obesity, and traumatic brain injury." *Id.* at 15. The ALJ also found Plaintiff had several non-severe impairments: mild spondylosis, mild subacute C5-6 radiculopathy, and mild carpal tunnel syndrome. *Id.* She considered these impairments non-severe because Plaintiff received conservative treatment, declined physical therapy, and managed with wrist splinting, respectively. *Id.* The ALJ further discussed Plaintiff's reports of diabetes, sleep apnea, Vitamin B12 deficiency, and age-related nuclear cataracts. *Id.* But the ALJ did not find that these alleged conditions were associated with symptoms which would impair work. *Id.* Finally, Plaintiff reported headaches and incontinence, which the ALJ noted were treated with medications and protective pads respectively, and thus caused only "slight work-related limitations." *Id.*

At step three, the ALJ found that Plaintiff did not have impairments that alone or in combination met or medically equaled the severity of a listed impairment. Adm. Rec. at 16. In particular, the ALJ examined the criteria for Listing 11.18 and Listing 12.02. *Id.* Furthermore, "the claimant's mental impairments" did not cause "at least two 'marked' limitations or one 'extreme' limitation," so "the 'paragraph B' criteria" were not satisfied. *Id.* And the paragraph C criteria were not satisfied because Plaintiff did not present "evidence of a mental disorder that [had] lasted for two years [or] require[ed] medical treatment," or one which showed "minimal capacity to adapt to changes or to demands" not already a part of her life. *Id.*

With "careful consideration of the entire record," the ALJ assessed the following residual functional capacity, which provided Plaintiff the capacity to perform medium work:

> The claimant should not climb ladders/scaffolds, work at unprotected heights, nor perform commercial driving. She could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Secondary to mental impairments, the claimant could understand, remember, and carry out instructions for routine, repetitive type, unskilled work. She could sustain attention and concentration for two-hour segments of time in an eight-hour day. The claimant could interact with coworkers and supervisors for work-related and task-oriented interactions; she could interact for brief and superficial contact with the public. The claimant could

> adapt to changes as needed in a work setting for a range of routine, repetitive type, unskilled work. She should avoid fast pace high production goal work (e.g., conveyor belt, assembly line).

Adm. Rec. at 17–18.

The ALJ explained how the record evidence supported the RFC determination, beginning with Plaintiff's testimony. Plaintiff attested to panic upon leaving her home, general confusion in paying bills or completing tasks, inability to grasp or hold objects, incontinence, a need to elevate her legs frequently to avoid swelling, consistent headaches, and "very limited" concentration. Adm. Rec. at 18–19. The ALJ determined that Plaintiff's medically determinable impairments could reasonably cause such symptoms but that Plaintiff's statements as to the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 24.

In making that determination, the ALJ conducted an extensive survey of the medical evidence in the record. Beginning with the physical examinations in the record, the ALJ noted that in January and February 2020 examinations, Plaintiff was assessed with "sleep apnea, and fatigue," but that her " traumatic brain injury [was] stable." Adm. Rec. at 19. In August and September 2020, the TBI remained "stable." *Id.* At an October 24, 2020 consultative exam, she "ambulated without assistance, had a normal gait, could rise from sitting, and could "stand … and bend and squat without difficulty." *Id.* Likewise, she had a negative Romberg test, 5/5 strength "throughout," and "[n]o physical diagnosis was indicated." *Id.* at 20. May and June 2021 physical assessments indicated "traumatic brain injury, PTSD, anxiety, and bilateral carpal tunnel syndrome." *Id.* at 21. A September 2021 assessment was largely consistent with those over the preceding year in assessing "traumatic brain injury, chronic headaches, history of concussion, dizziness, bilateral carpal tunnel syndrome, and cognitive impairment." *Id.* at 22. In March 2022, Plaintiff was assessed, according to the ALJ, with "bilateral lower extremity venous insufficiency," and "bilateral carpal tunnel syndrome, chronic migraines with aura, possible cervicogenic headaches, and cervical spondylosis." *Id.* at 23.

The ALJ also reviewed Plaintiff's psychological examinations. In November 2020, Plaintiff appeared "noticeably nervous, was late," and her speech was "rapid." Adm. Rec. at 20. The consultant also assessed

5

an "anxiety disorder." *Id.* Nevertheless, she was cooperative and attentive, with "euthymic mood and average thought processes," as well as a normal ability to follow "multi-step commands." *Id.* A December 2020 follow-up indicated that Plaintiff was "talkative and engaged." *Id.* These general findings were mirrored in further mental health follow up from January through May 2021. While Plaintiff reported that "she felt overwhelmed and had speech and focus issues at times," she had made "progress toward her goals … and was noted as smart and intelligent." *Id.* at 20. Likewise, Plaintiff had a "[m]ental status … within normal limits" through November 2021, but was assessed for "major depressive disorder and PTSD." *Id.* at 22. January through March 2022 "behavioral health therapy" visits indicated "good vocabulary, sentence structure, and speech patterns," as well as "normal memory" and "improvement in focus." *Id.* at 22. April through June 2022 medical records "indicated 'excellent gains' in time management, 'huge' steps forward, great improvement in organization and time management, and excellent organizational skills." *Id.* at 24.

Overall, the ALJ noted that physical and psychological reports demonstrated that while Plaintiff had "obesity," "physical exams were generally normal," "the evidence" did not "corroborate ambulation difficulties," Plaintiff's incontinence "would not require a work limitation" due to her use of protective pads, and her headaches were treatable with medication. Adm. Rec. at 24. Moreover, her psychiatric symptoms and difficulty interacting with others did not show "disabling problems." *Id.* Generally, "treatment was conservative with medications and therapy," and while the record indicated "period[s] of anxiety" and distractibility, the ALJ determined that Plaintiff was improving over time. *Id.* at 25.

The ALJ also evaluated the medical opinions in the record. The opinions of consultative physicians drawn from physical exams were of "limited persuasive value" because the remainder of the record indicated "some physical limitations," and the assessment of cognitive functioning was "outside the scope of the examiner[s'] specialty field[s]." Adm. Rec. at 26. The ALJ found the psychological consultative opinion of Dr. Koeneman "somewhat persuasive" as it was "generally supported by the consultative exam findings," but the Plaintiff had "tangential and circumstantial thought processes," that militated in favor of an RFC which included "routine repetitive type unskilled work," a limitation beyond Koeneman's assessment. *Id.* at 27. The ALJ found the opinions of Dr. Martin and Dr. Bucklew "generally

6

persuasive" as the "rapid speech, nervousness, and guarded interactions" they reported were supported by the record, particularly the March 2022 neuro-psychological evaluation. *Id.*

The reports of Plaintiff's providers Suzanne Green Johnston, SLP, and Mark Cannon, M.D., were found "not persuasive." Both Johnston and Cannon marked some categories of ability as "mildly limited," some as "moderately limited," some as "markedly limited," and some as "extremely limited." *See, e.g.,* Adm. Rec. at 1031. But the ALJ determined that the "marked and extreme limitations" they reported on "check the box" forms were inconsistent with the record as Plaintiff had made significant gains in mental functioning through therapy and both providers suggested only limited treatment in the form of "conservative outpatient therapy." *Id.* at 27–28.

Based on the record and the assessed RFC, the ALJ determined Plaintiff was unable to perform any past relevant work, including as a legal assistant, personal care attendant, receptionist, or customer service clerk. Adm. Rec. at 29. As a result, the ALJ determined, at step five, that Plaintiff was not disabled because there were jobs "in significant numbers" in the national economy that Plaintiff could perform in light of her RFC, age, education, and past work experience. *Id.* at 30 (citing 20 C.F.R. § 404, Subpt. P, App. 2).

## II

Contrary to Plaintiff's arguments, the ALJ adequately assessed the opinions and reports of Johnston, Cannon, and Spresser. Plaintiff thus fails to show that substantial evidence for the Commissioner's decision was lacking. Accordingly, the Commissioner's final decision is affirmed.

## A

Plaintiff argues that the ALJ failed to resolve material conflicts between Johnston and Cannon's medical opinions and the assessed RFC. Doc. 8 at 6. She claims that the RFC was not supported by substantial evidence as a result. *Id.* That claim fails.

A reviewing court cannot overturn an ALJ's reasoned decision on the grounds that the ALJ should have evaluated medical opinions differently unless the ALJ's decision was lacking in substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). To be sure,

under SSR 96-8p, an ALJ is required to explain any "material inconsistencies or ambiguities in the evidence," as well as how they were considered and resolved. *Tracy v. Astrue*, 518 F. Supp. 2d 1291, 1297 (D. Kan. 2007). But in the context of evaluating a medical opinion, that means the ALJ must explain and give reasons why that medical opinion was either adopted, not adopted, or adopted or not adopted only in part. *Id.* Judging the reasons given as inadequate is beyond the scope of review unless no reasonable person could accept the provided reasons as adequate. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence … means–and means only—'such relevant evidence as a reasonable mind might accept as adequate.'").

The ALJ did not err in her treatment of Johnston and Cannon's opinions. Plaintiff's first argument is that the ALJ adopted the moderate limitations that Johnston and Cannon found and that those moderate limitations conflict with the RFC, creating a material inconsistency the ALJ did not explain. Doc. 8 at 9. That is inaccurate. The ALJ did not explicitly accept Johnston's and Cannon's assessment of such moderate limitations—instead she neither explicitly accepted nor rejected them. Plaintiff herself acknowledges this in arguing later in her brief that the ALJ's failure to explicitly reject the "moderate limitation[]" findings was an invidious "silent omission." Doc. 8 at 9. That version of the argument might have merit—ALJ's are generally required to discuss pertinent evidence—but the ALJ did discuss both opinions in some detail. *See* Adm. Rec. at 27. The ALJ is not required to go further and, line-by-line, explicitly accept or reject every granular finding in a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(1) (describing the required "Source-level articulation"); *see also Bailey v. Berryhill*, 250 F. Supp. 3d 782, 785 (D. Colo. 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)).

More importantly, the ALJ's implicit decision not to incorporate the moderate limitations Johnston and Cannon's opinions noted in the RFC was supported by substantial evidence. As the ALJ determined, both Johnston and Cannon only recommended "conservative outpatient therapy and medications," so their assessments of moderate or extreme limitations were "inconsistent with other evidence." Adm. Rec. at 28. This gave the ALJ a reason not to adopt all of Johnston and Cannon's findings. Such other evidence included "therapy notes from Minds Matter in 2021," "April 6, 2022 progress notes," and the March 31, 2022 neuropsychological evaluation. Adm. Rec. at 28. Those sources of evidence indicated, among other things, negative Romberg

tests, normal strength findings, and "fair attention and concentration," as well as a finding that any cognitive impairment may have been due to acute engagement problems or sleep issues. *Id.* A reasonable person could accept such evidence as adequate to support the ALJ's treatment of Johnston and Cannon's opinions. *Cf. Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (holding that the evidence employed by an ALJ to reject a diagnosis of myo-fascial pain syndrome as a "possibility" rather than a necessary limitation on a claimant's capacity to work was adequate).

**B**

Likewise, there was no error in discussing Dr. Spresser's report as "other medical evidence," rather than rendering a finding as to its overall persuasiveness or incorporating elements of her report favorable to Plaintiff in the assessed RFC. *Contra* Doc. 8 at 11. "Other medical evidence" is medical evidence that does not qualify as a medical opinion. Medical opinions are defined in 20 C.F.R. § 404.1513(a)(2) as "statement[s] from a medical source about what [a claimant] can still do despite" any impairments and/or statements regarding "whether [a claimant]" has an "impairment-related limitation[]" in their ability to perform the demands of work, or their ability to adapt to environmental conditions. But Section 404.1513(a)(3) excludes "other medical evidence," defined as "medical evidence … from a medical source that is not objective medical evidence … including judgments about the nature and severity of [a claimant's] impairments,[] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis," from the category "medical opinion." *See* 20 C.F.R. § 404.1513(a)(3).

Spresser's report was properly treated as "other medical evidence." Plaintiff contends that the "ALJ herself apparently considered Dr. Spresser's report to be a medical opinion because she evaluated the 'persuasiveness' of Dr. Spresser's assessment." Doc. 15 at 4. And Plaintiff notes that Spresser recommended frequent breaks while working: a limitation affecting Plaintiff's ability to perform the demands of work. Doc. 15 at 4. Such facts do not transform Spresser's report into a "medical opinion" under the regulations. First, the exhibit in which Spresser's report appears (10F) is marked as "Attorney/Representative-Supplied Evidence," not "medical opinion" in the list of exhibits the ALJ considered. *See* Adm. Rec. at 36. This undermines Plaintiff's point that the ALJ herself considered Spresser's report a medical opinion. Second, Spresser discussed her findings in the

context of a "neurobehavioral status exam" conducted by referral and was making a judgment about the nature of Plaintiff's conditions as well as making recommendations for treatment, rather than opining on functional limitations in the context of an assessment directed towards determining Plaintiff's work-related limitations. *See* Adm. Rec. at 967. That is a permissible reason to treat the report as "other medical evidence." *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 907 (10th Cir. 2023) (affirming the categorization of a "general" "recommendation" regarding the accommodations a claimant may need in the work environment as not a "medical opinion"). Neglecting to render an overall persuasiveness judgment about Spresser's report and declining to adopt all of its "recommendations" was not error. *See R.L.M. v. Kijakazi*, No. 22-CV-03179, 2023 WL 8355963, at *8 (D. Colo. Dec. 1, 2023).

*Kristin I. v. Kijakazi*, cited by Plaintiff, is not persuasive here. *Contra* Doc. 15 at 5 (citing No. 20-01182, 2021 WL 4523455 (D. Kan. Oct. 4, 2021)). There, a reviewing court rejected the argument that a statement from a medical source was not a medical opinion solely because it included qualifying phrases and was in the form of a recommendation. *Kristin I.*, 2021 WL 4523455, at *6. But Spresser's report is "other medical evidence" because it was not rendered in the context of opining on functional limitations at work. And while the report's language could imply limitations, that is not dispositive since opining on limitations was not the purpose of the report. *See* 20 C.F.R. § 404.1513(a)(3). As a result, it was proper for the ALJ to discuss Spresser's report primarily as evidence undermining the conclusions of medical opinions like those of Johnston and Cannon, rather than as a "medical source opinion" in its own right. *R.L.M. v. Kijakazi*, No. 22-CV-03179, at *8 (concluding that discussing "other medical evidence" and its "consistency" with "medical source opinion" is both consistent with and required by the updated regulations).

Finally, even if Spresser's report should have been treated as a medical opinion, there is no clear conflict between the RFC and Spresser's report. *See* Adm. Rec. at 966–67 (reporting "performance in each cognitive domain [was] within normal limits," and that Plaintiff's "cognitive profile is not typical of cognitive impairment caused by an organic cognitive deficit."). So, Plaintiff has not shown that Spresser's report undermines the conclusion that the ALJ had substantial evidence for her determination of the RFC or that the report necessarily conflicts with the RFC.

### III

10

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: June 5, 2024                              s/ Toby Crouse
                                                Toby Crouse
                                                United States District Judge